UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>United States Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 4100<br>Washington, DC 20530,<br><br>*Plaintiff*,<br><br>v.<br><br>REDDY ICE LLC,<br>5710 LBJ Freeway, Suite 300<br>Dallas, TX, 75240,<br><br>STONE CANYON INDUSTRIES<br>HOLDINGS, LP,<br>1875 Century Park East, Suite 320<br>Los Angeles, CA, 90067,<br><br>and<br><br>CHILL PARENT HOLDCO, L.P.,<br>1001 Pennsylvania Ave NW, Suite 220S<br>Washington, DC, 20003<br><br>*Defendants*. | Case No.: 1:26-cv-271 |

## COMPLAINT

Reddy Ice seeks to acquire Arctic Glacier, combining the largest two producers of packaged ice in certain parts of the United States where they both compete. This proposed acquisition threatens to eliminate substantial head-to-head competition and risks increasing prices for packaged ice paid by retail chains in Oregon, Washington, and Imperial and Riverside counties in California, and also by airlines and airline caterers in the New York City and Boston

1

metropolitan areas. The United States of America brings this civil action under Section 7 of the Clayton Act, 15 U.S.C. § 18, to enjoin this anticompetitive merger.

## I.   INTRODUCTION

1.  Found at backyard cookouts and on cross-country flights, packaged (or bagged) ice is a staple of American life. Packaged ice producers sell packaged ice to national, regional, and multi-regional retail chains, airlines, and airline caterers, among other customers. These large ice purchasers require high-quality service from packaged ice producers. Retail chains want ice reliably stocked in their stores, particularly during the summer months, and airlines need ice to serve their customers during in-flight beverage services.

2.  Packaged ice producers, such as Reddy Ice and Arctic Glacier, deliver ice to their customers or customers' warehouses directly from their plants or distribution facilities. Reddy Ice and Arctic Glacier also contract with other ice producers, called co-packers, who manufacture and deliver ice to some of Reddy Ice's and Arctic Glacier's customers, typically to locations outside of Reddy Ice's and Arctic Glacier's facility footprints. Working with co-packers can keep down the costs of transport, which can be high due to packaged ice's high volume and weight relative to its sales price, as well as the expense of fuel and refrigeration.

3.  The packaged ice industry has undergone significant consolidation resulting in there being three large packaged ice producers—Reddy Ice, Arctic Glacier, and Home City Ice—having largely complementary footprints in the United States, although they do overlap in some geographic areas. Reddy Ice's packaged ice facilities are located in the Southeast, South, and parts of the West and West Coast; Arctic Glacier's packaged ice facilities are located in the Northeast, parts of the Midwest, and on the West Coast; and Home City Ice's packaged ice facilities are located in the Midwest and in parts of the Mid-Atlantic and Southeast.

4. Competition between Reddy Ice and Arctic Glacier for the sale of packaged ice to large purchasers such as retail chains, airlines, and airline caterers has resulted in lower prices and better service for these customers. The proposed acquisition would substantially lessen this competition, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and should be enjoined.

## II.   THE DEFENDANTS AND THE PROPOSED TRANSACTION

5. Reddy Ice is the largest producer of packaged ice in the United States with annual revenues of approximately $511 million. It is headquartered in Dallas, Texas, and is owned by Stone Canyon Industries Holdings, LP. The company sells packaged ice in 37 states and the District of Columbia. It operates 100 ice manufacturing facilities and distribution facilities in the United States. Reddy Ice also owns approximately 2,320 in-store bagging machines that produce and package ice for retail chains like grocery stores and convenience stores.

6. Arctic Glacier is the third largest packaged ice producer in the United States with annual revenues of approximately $306 million. It has dual headquarters in Bala Cynwyd, Pennsylvania, and Winnipeg, Canada. Arctic Glacier's ultimate parent entity is Chill Parent Holdco, L.P., which the Carlyle Group owns. Arctic Glacier sells its packaged ice in 19 states. It operates 57 ice manufacturing facilities and distribution facilities in the United States.

7. On July 3, 2025, Reddy Ice and Arctic Glacier executed a purchase agreement through which Reddy Ice will acquire Arctic Glacier for more than $126.4 million but less than $179.4 million.

## III.   THE RELEVANT MARKETS FOR EVALUATING THE PROPOSED TRANSACTION

8. Commercial purchasers of packaged ice, such as large retail chains and other multi-location customers, strongly prefer to purchase from large producers with broad

geographic footprints, such as Reddy Ice, Arctic Glacier, and Home City Ice. These producers operate at scale and are uniquely capable of serving these multi-location retail chains and other customers because they each have large regional networks with dozens of manufacturing and distribution facilities. While there are hundreds of smaller local packaged ice producers, most have only a single facility and are therefore generally unable to compete for the business of multi-location customers.

9. Reddy Ice and Arctic Glacier compete for the sale of packaged ice in areas where they are both present, either with a manufacturing facility or through a co-packer. In assessing the likely effects of this transaction, the relevant markets are best defined by the type and locations of the customers purchasing the packaged ice. Those markets include (1) the sale of packaged ice to retail chains with stores in areas where the parties compete, and (2) the sale of packaged ice to airlines and airline caterers in areas where the parties compete.

### A. The Sale of Packaged Ice to Retail Chains in Oregon, Washington, and Imperial and Riverside Counties in California are Relevant Markets

10. The sale of packaged ice to retail chains is a relevant product market. There are no reasonable substitutes for packaged ice sold to retail chains. For most retail chains, alternative ways of procuring ice—such as ice vending machines and self-supply—are not viable due to cost, capacity, and space limitations.

11. Packaged ice producers negotiate individual prices with retail chains for delivery of packaged ice to multiple stores. Retail chains with stores in locations where the parties compete can therefore be targeted for price increases. Similarly situated retail chains can be grouped together for analytical convenience to assess the competitive effects of the transaction. The relevant geographic markets in which retail chains will likely be harmed by the proposed

transaction are the locations of these similarly situated targetable customers in Oregon, Washington, and Imperial and Riverside counties in California.

12. Retail chains in these markets generally do not consider small and single-location packaged ice producers as viable options, so they often rely on large packaged ice producers with broad geographic footprints for packaged ice supply. Retail chains in these markets often prefer to contract with large packaged ice producers because they have the ability to serve stores across multiple geographies. Other reasons include volume discounts; proven ability to serve large customers; the administrative simplicity of fewer suppliers; and the ability of large packaged ice producers to supply back-up ice from alternative facilities.

13. A hypothetical monopolist supplier of packaged ice to retail chains in Oregon, Washington, and Imperial and Riverside counties in California would profitably increase prices by at least a small but significant non-transitory amount because retail chains in these areas have no practical alternative source of supply. Therefore, the sale of packaged ice to retail chains in Oregon, Washington, and Imperial and Riverside counties in California are relevant markets within the meaning of Section 7 of the Clayton Act.

**B.   The Sale of Packaged Ice to Airlines and Airline Caterers in the Metropolitan Areas of Boston and New York City are Relevant Markets**

14. The sale of packaged ice to airlines and airline caterers is a relevant product market. There are no reasonable substitutes for packaged ice sold to airlines and airline caterers. Airlines and airline caterers buy packaged ice primarily to supply the ice used during in-flight beverage services. Unlike retail chains, most airlines and airline caterers purchase smaller, five-pound bags in heat-sealed bags, which require different machinery that many ice producers do not have, rather than the typical seven-pound (or larger) bags sold to retail chains. Ice vending

machines and self-supply of packaged ice are not viable alternatives for most airlines and airline caterers due to cost, capacity, and space limitations.

15. Packaged ice producers negotiate individual prices with airlines and airline caterers for delivery to airports. Airlines and airline caterers in locations where the parties compete can therefore be targeted for price increases. Similarly situated airlines and airline caterers can be grouped together to assess the effects of the transaction. The relevant geographic markets in which airlines and airline caterers will likely be harmed by the proposed transaction are the locations of these similarly situated targetable customers in the metropolitan areas of Boston and New York City.

16. Airlines and airline caterers in these markets generally do not consider small, local packaged ice producers as viable options, so they rely mainly on large packaged ice producers capable of producing high volumes of five-pound heat-sealed bags for packaged ice supply.

17. A hypothetical monopolist supplier of packaged ice to airlines and airline caterers in the metropolitan areas of Boston and New York City would profitably increase prices by at least a small but significant non-transitory amount because airlines and airline caterers in these areas have no practical alternative source of supply. Therefore, the sale of packaged ice to airlines and airline caterers in these areas are relevant markets within the meaning of Section 7 of the Clayton Act.

IV. **ANTICOMPETITIVE EFFECTS OF THE PROPOSED TRANSACTION**

18. The proposed transaction would combine Reddy Ice and Arctic Glacier, the largest packaged ice producers capable of servicing, whether directly or through co-packers, most retail chains, airlines, and airline caterers in the relevant geographic markets.

19. In each of the relevant markets, Reddy Ice and Arctic Glacier compete head to head to sell packaged ice. Competition between them lowers prices and improves service in the relevant markets. Many customers solicit bids from packaged ice producers and select the bidder that offers the best combination of service quality and price. Even customers who use less formal procurement processes benefit from the competition between these two large producers on price and quality of service.

20. Smaller local ice producers are typically not invited to bid on business from retail chains, airlines, or airline caterers. These customers can usually arrange more convenient supply to all of their locations, nationally or regionally, by contracting with larger packaged ice producers such as Reddy Ice and Arctic Glacier. Many of these customers are also reluctant to incur the additional risks and administrative costs of adding contracts with untested small producers that can only deliver locally.

21. Because the proposed transaction would eliminate head-to-head competition between Reddy Ice and Arctic Glacier and leave retail chains, airlines, and airline caterers in the relevant markets with few, if any, competitive alternatives, it is likely to significantly lessen competition and lead to higher prices, reduced service quality, or both.

## V. POTENTIAL ENTRY OR EXPANSION WOULD NOT OFFSET ANTICOMPETITIVE EFFECTS

22. New entry and expansion by competitors are unlikely to be timely and sufficient to offset the proposed merger's likely anticompetitive effects. Barriers to entering the market at sufficient scale are high. Significant up-front capital is required to start a network of production facilities with the scale needed to meaningfully compete with the combined firm. There are also reputational barriers that prevent new entrants from replacing the lost competition between these large and established suppliers in a timely manner.

23. The proposed transaction is unlikely to generate verifiable, merger-specific efficiencies sufficient to reverse or outweigh the anticompetitive effects that are likely to occur as a result of the proposed transaction.

## VI.     JURISDICTION AND VENUE

24. The United States brings this action pursuant to Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

25. Defendants sell packaged ice in the flow of interstate commerce and their sale of the product substantially affects interstate commerce, including in this judicial district. This court therefore has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

26. Both Defendants transact business in this judicial district. Venue is therefore proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c).

## VII.     VIOLATION ALLEGED

27. The United States hereby incorporates the allegations of paragraphs 1 through 26 above as if set forth fully herein.

28. The effect of the proposed transaction may be substantially to lessen competition in interstate trade and commerce, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

29. Unless enjoined, the proposed transaction would likely have the following anticompetitive effects, among others:

  (a) Eliminating head-to-head competition between Defendants for packaged ice sold to retail chains, airlines, and airline caterers in the relevant markets;

  (b) Substantially lessening competition generally for packaged ice sold to retail

chains, airlines, and airline caterers in the relevant markets;

(c) Causing prices to be higher than they would be otherwise for packaged ice sold to retail chains, airlines, and airline caterers in the relevant markets; and

(d) Reducing choice and quality of service for customers purchasing packaged ice in the relevant markets.

## VIII. REQUEST FOR RELIEF

30. The United States requests that this Court:

(a) Adjudge and decree that Reddy Ice's acquisition of Arctic Glacier is unlawful and violates Section 7 of the Clayton Act, 15 U.S.C. § 18;

(b) Permanently enjoin and restrain Defendants and all persons acting on their behalf from consummating the proposed acquisition of Arctic Glacier by Reddy Ice, or from entering into or carrying out any contract, agreement, plan, or understanding, the effect of which would be to combine Arctic Glacier and Reddy Ice;

(c) Award the United States its costs for this action; and

(d) Award the United States such other and further relief as the Court deems just and proper.

Dated: January 30, 2026

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

| | |
|---|---|
| ABIGAIL A. SLATER (D.C. Bar #90027189)<br>*Assistant Attorney General* | */s/ Natalie Melada*<br>NATALIE MELADA*<br>NICOLE CULLEN |
| MARK H. HAMER (D.C. Bar #1048333)<br>*Deputy Assistant Attorney General* | JUSTIN DEMPSEY (D.C. Bar #425976)<br>DAVID GROSSMAN (D.C. Bar #1601691)<br>CHRIS HONG |
| GEORGE C. NIERLICH (D.C. Bar #1004528)<br>*Acting Director of Civil Enforcement (Mergers)* | BARRY JOYCE<br>STELLA MARTIN (D.C. Bar #90029539) |
| JILL C. MAGUIRE (D.C. Bar #979595)<br>*Acting Chief, Healthcare and Consumer Products Section* | *Trial Attorneys*<br><br>U.S. Department of Justice<br>Antitrust Division |
| MEAGHAN GRIFFITH (D.C. Bar #1034228)<br>*Acting Assistant Chief, Healthcare and Consumer Products Section* | Healthcare and Consumer Products Section<br>450 Fifth Street NW, Suite 4100<br>Washington, DC 20530<br>Tel.: (202) 705-9116<br>Email: natalie.melada@usdoj.gov<br><br>* LEAD ATTORNEY TO BE NOTICED |